UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FRANK HOLT and NORMAN HART, derivatively on behalf of SMITH & WESSON HOLDING CORP., Plaintiffs | ) | |
| v. | ) | C.A. No. 11-cv-30200-MAP |
| MICHAEL F. GOLDEN, AMARO GONCALVES, P. JAMES DEBNEY, MITCHELL A. SALTZ, ROBERT L. SCOTT, JEFFREY D. BUCHANAN, JOHN B. FURMAN, I. MARIE WADECKI and BARRY M. MONHEIT, Defendants | ) | |
| and | ) | |
| SMITH & WESSON HOLDING CORP., Nominal Defendant | ) | |

MEMORANDUM AND ORDER REGARDING
NOMINAL DEFENDANT SMITH & WESSON'S MOTION TO DISMISS
(Dkt. No. 5)

July 25, 2012

PONSOR, U.S.D.J.

## I. INTRODUCTION

Nominal Defendant Smith & Wesson Holding Corp. ("S&W"), a Nevada corporation, is a firearms manufacturer with its principal place of business in Springfield, Massachusetts. Its former director of international sales, Amaro Goncalves,

was indicted in the District of Columbia for violating the Foreign Corrupt Practices Act of 1977 ("FCPA").[1] Plaintiffs, Frank Holt and other shareholders, seek to sue members of the board of S&W and company officers derivatively on behalf of the corporation for failing to have effective FCPA controls and oversight, thereby breaching their duty of care under In re Caremark Int'l Derivative Litig., 698 A.2d 959 (Del. Ch. 1996).

Plaintiffs did not make a pre-suit demand on the S&W board under Nevada Rules of Civil Procedure ("NRCP") Rule 23.1,[2] but they contend that such a demand would have been futile because the S&W board was not disinterested. Defendant argues that a demand was required and has moved to dismiss on the grounds that Plaintiffs have not adequately pled demand futility. It points to a decision by a Hampden County Superior Court judge in another derivative action against S&W to the effect that a demand upon the S&W board was not futile. This decision, Defendant says, operates to preclude any claim of demand futility in this court. In the

[1] Notably, the Department of Justice subsequently dropped all charges against Goncalves. See United States v. Goncalves, No. 09-335 (D.D.C. Feb. 22, 2012).

[2] In a derivative action state law supplies the futility and demand standards required in a pleading. Kamen v. Kemper Fin. Servs., 500 U.S. 90, 101-03 (1991).

alternative, Defendant argues that, even in the absence of
the prior state court decision, Plaintiffs have not pled
with sufficient particularity facts that would allow the
court to conclude that demand would have been futile.

As the discussion below will demonstrate, either of
Defendant's arguments alone would support dismissal.  Issue
preclusion bars any claim of demand futility here, and
Plaintiffs have, in any event, failed to plead sufficient
facts to support their position that demand would have been
futile.  Defendant's motion to dismiss will therefore be
allowed.

## II. BACKGROUND

Amaro Goncalves was hired by S&W in 2004 as part of
S&W's strategy to "step up [its] efforts in the law
enforcement and international markets." (Dkt. No. 1, Ex. A,
Compl. ¶ 48.)

Mr. Goncalves was apparently successful: in 2006 the
company won over $20 million in government business,
including the sale of over 73,000 pistols to the Afghanistan
National Police and Border Patrol.  At the same time, in
2006 the company saw growth of over 58 percent in
international sales. (Id. ¶ 51.)  As a result of this
success, Mr. Goncalves was promoted to Vice President of law
enforcement, international, and U.S. government sales. (Id.

¶ 52.)

Mr. Goncalves was indicted in the U.S. District Court for the District of Columbia on December 11, 2009 for violating the FCPA, conspiring to commit violations of the FCPA, conspiring to commit money laundering, and aiding and abetting. (Id. at ¶ 56.) As noted, the charges against him were dropped in early 2012. See note 1, supra.

This suit was originally filed in the District Court, Clark County, Nevada on September 3, 2010, and subsequently re-filed in this court on July 20, 2011. (Id. ¶ 69.) At that time S&W's board consisted of seven directors, all named as individual defendants in this lawsuit. The complaint also alleges breaches of fiduciary duty by two additional non-director defendants, Goncalves and P. James Debny.

Plaintiffs allege that the directors caused S&W to fail to institute and maintain internal controls and thereby permitted S&W to engage in systematic violations of the FCPA, which, Plaintiffs say, resulted in the now-dropped indictment against Goncalves.

In mid-2008, in a case filed in Hampden County Superior Court captioned In re Smith & Wesson Holding Corp., No. 2008-0099, another plaintiff filed a derivative complaint against S&W for making misleading statements about the

company's financial condition.  This state court case also alleged that pre-suit demand would be futile.

The state court suit had five counts: (1) breach of fiduciary duty for improper financial reporting; (2) breach of fiduciary duty for insider selling and misappropriation of information; (3) breach of fiduciary duty for "abuse of control"; (4) breach of fiduciary duty for gross mismanagement; (5) waste of corporate assets; and (6) breach of fiduciary duty for gross mismanagement.  See In re Smith and Wesson Holding Corp., No. 2008-0099, slip op. at 6 (Mass.Super.Ct. Jan. 6, 2009) (Kinder, J.) (the "state court case").

At the time of the state court case, one current member of the S&W board (and defendant in this case), Mitchell A. Saltz, was not a member of the board.  Id. at 2.  The makeup of S&W's board was otherwise identical.

In his order, Judge Kinder found that demand on the S&W board would not have been futile and dismissed the complaint.  He concluded that the plaintiff had not raised a reasonable doubt as to whether at least four of S&W's board's seven members could have properly exercised their independent and disinterested business judgment.  He ruled that, under these circumstances, the plaintiff was required to make a pre-suit demand and, failing that, the suit should

be dismissed.

## III. DISCUSSION

### A. Issue Preclusion.

Defendant argues that the Massachusetts state court case precludes Plaintiffs from arguing that demand upon the S&W board would have been futile. The court agrees.

It is undisputed that Massachusetts issue preclusion standards apply here. Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 523 (1986).

In Massachusetts, issue preclusion applies when (1) there was a final judgment on the merits in a prior adjudication; (2) the party against whom issue preclusion is asserted was a party, or in privity with a party, to the prior adjudication; (3) the issue in the prior adjudication was identical to the issue in the current adjudication; and (4) the issue decided in the prior adjudication was essential to the earlier judgment. In re Sonus Networks, 499 F.3d 47, 56-57 (1st Cir. 2007), citing Kobrin v. Bd. of Registration in Med., 832 N.E.2d 628, 634 (Mass. 2005).

Plaintiffs challenge Defendant's issue preclusion argument only in connection with the third requirement: this case and the state court case, they say, lack issue identity in two ways. First, the state court opinion was issued on January 6, 2009 while the alleged misconduct in this case

was not publicly revealed by the Department of Justice until December 11, 2009. Second, according to Plaintiffs, the misconduct alleged here -- namely, failure to prevent violations of the FCPA -- was different from the misconduct alleged in the state case, which involved issuance of misleading financial statements.

However, as Defendant points out, the core issue in the state court case, as in this one, was whether the S&W board was capable of impartially resolving a shareholder demand. The S&W board of directors in place at the time of the state court decision was identical to the board in place at the time this lawsuit was filed, save for one person. In other words, at least four of the seven directors that Judge Kinder found were disinterested were still on the board at the time this lawsuit was filed and would still make up a disinterested majority. While the charged misconduct may be different, the material issue -- the disinterestedness of essentially the same S&W board -- was precisely identical in both the state court case and this one.

Plaintiffs, relying on the First Circuit's Sonus decision, argue that there has been a change in the availability of information to plead demand futility and that this new information supports a different decision here. A close look at this "new" information, however,

reveals that it is no more than a re-hashing of information that was available at the time of the state court lawsuit. As in Sonus, this re-casting of information previously available "by no means transfigures the demand futility issue so that issue preclusion is inappropriate." 499 F.3d at 63.

In sum, Defendant is entitled to dismissal by operation of the doctrine of issue preclusion.

B. Failure to Plead.

Even if the doctrine of issue preclusion did not provide clear support for dismissal here, the pleadings would, substantively, fall far short of the necessary threshold to excuse demand under NRCP 23.1.

Rule 23.1 requires a plaintiff seeking to sue a corporation derivatively to state with particularity his or her reasons for not first making a demand on the company's board if he or she chooses not to do so.

If a plaintiff pleads that demand is futile, Nevada courts apply two different standards for evaluating the pleadings. Schoen v. SAC Holding Corp., 137 P.3d 1171, 1181-84 (Nev. 2006). The first standard, which comes from Aronson v. Lewis, 473 A.2d 805, 814 (Del. 1984), applies when the claim involves a matter where the majority of the board acted. The second standard, which comes from Rales v.

Blasband, 634 A.2d 927, 933-34 (Del. 1993), applies when the claim involves a matter that was not subject to action by the majority of the board.  In this case, both parties agree that the Rales test governs.

Under Rales, demand is excused only when a plaintiff pleads particularized facts creating a "reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment."  Id. at 934.  A "substantial likelihood" that a director would face liability can sometimes create this reasonable doubt.  Id. at 936.  Significantly, however, Nevada permits the immunization of directors against personal liability for both their duty of care and their duty of loyalty to the corporation.  Where such immunity exists, "interestedness through potential liability is a difficult threshold to meet."  Schoen, 137 P.3d at 1184; see also N.R.S. § 78.138(7); S&W Articles of Incorporation (Dkt. No. 7, Ex. B).[3]

In general, director oversight liability requires a

---

[3] Nevada permits courts considering motions to dismiss to take judicial notice of documents that are public records or incorporated by reference in the complaint.  Breliant v. Preferred Equities Corp., 858 P.2d 1258, 1261 (Nev. 1993). The complaint refers extensively to S&W's bylaws, which are public records filed with the Nevada Secretary of State.

particularized pleading of facts showing that:

> (a) the directors utterly failed to implement any reporting or information system or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention.

Stone v. Ritter, 911 A.2d 362, 370 (Del. 2006).

At the hearing on this motion, Plaintiffs' counsel suggested that NRCP 23.1 requires fewer particularized facts when the scope of a director's potential liability is substantial. Plaintiffs cited In re Massey Energy Corp. Derivative Litig., No. 5430-VCS, 2011 WL 2176479, at *17 (Del.Ch. May 31, 2011), in support of this proposition. Massey does not assist Plaintiffs here. That case arose in connection with a motion for a preliminary injunction where, in the context of a merger, derivative plaintiffs sought to preserve their pre-merger director liability claims. The essence of the derivative claim was that the company's board failed to oversee mine safety operations. Id. at *19. In making a determination about the derivative plaintiffs' eventual likelihood of success for purposes of the motion for injunctive relief, the court found that the plaintiffs had offered a strong case at the pleading stage. However, in Massey, unlike in this case, the company itself had (1) already pled guilty to criminal charges for a mine fire that

killed two people, (2) was caught trying to hide violations of the law, and (3) had multiple civil settlements for mine safety violations. With this history, the company allegedly continued to fail to take appropriate safety measures, resulting in a catastrophe that killed twenty-five people only two years after it had been convicted of safety violations following the mine fire. Id. at *20.

Far from announcing any flexible pleading standard, the Massey decision merely pointed out the obvious fact that a company that continued to be involved in criminal activities was likely not well supervised and that the plaintiffs were likely to prevail. This lawsuit arises in an entirely different procedural context, and it offers no allegation that S&W's board was aware of a long history of criminal activity and failed to act.

In this case, the complaint alleges, in essence, that the company enjoyed an increase in international sales and then had an employee indicted for FCPA violations. This indictment, later dropped, supposedly evidenced a failure to implement proper controls. Even assuming that Massey stands for the proposition that the requirements to show demand futility may be relaxed where evidence of liability is gross, the allegations offered here fall far short. Indeed, nothing offered in the complaint comes close to pushing the

case over the "difficult threshold" that NRCP 23.1 imposes. See Schoen, 137 P.3d at 1184. The complaint is flatly devoid of any adequate justification for failing to make the required pre-suit demand.

## IV. CONCLUSION

For the foregoing reasons, Nominal Defendant Smith & Wesson's Motion to Dismiss (Dkt. No. 5) is hereby ALLOWED. The clerk will enter judgment of dismissal. This case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge